UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY ALLEN WILLIAMS, CDCR #H-98762,<br><br>                                      Plaintiff,<br><br>vs.<br><br>GAVIN NEWSOM; KATHLEEN ALLISON; MARCUS POLLARD; CCI GODINEZ; CC2 E. AUKERMAN; DR. YUSUFZIE; CMF; ADAMS; DR. BLASDELLS; CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES; DOES 1 TO 5,<br><br>                                      Defendants. | Case No.: 3:20-cv-02398-GPC-AHG<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS (ECF No. 2);**<br><br>**2) DISMISSING CLAIMS AND DEFENDANTS FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND 28 U.S.C. § 1915A(b) ;**<br><br>**3) DISMISSING DEFENDANTS PURSUANT TO FRCP 21;**<br><br>**4) DIRECTING USMS TO EFFECT SERVICE OF COMPLAINT ON REMAINING DEFENDANTS** |

    Plaintiff Rodney Allen Williams ("Plaintiff"), currently incarcerated at Richard J. Donovan Correctional Facility ("RJD"), is proceeding pro se in this action seeking damages and injunctive relief for alleged violations of the Americans with Disabilities Act

("ADA") and for violations of the Eighth Amendment under 42 U.S.C. Section 1983. (*See generally* ECF No. 1-2, Compl.)

Plaintiff did not prepay the $402 civil filing fee required by 28 U.S.C. Section 1914(a) at the time of filing and has instead filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. Section 1915(a). (*See* ECF No. 2.)

**I.     Motion to Proceed In Forma Pauperis**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a).  The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. Section 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).  However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed.  *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance

---

[1]  In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)).  The additional $52 administrative fee does not apply to persons granted leave to proceed IFP.  *Id.*

in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a certified copy of his trust account statement pursuant to 28 U.S.C. Section 1915(a)(2) and S.D. Cal. Civ. L.R. 3.2. *Andrews*, 398 F.3d at 1119. The Court has reviewed Plaintiff's trust account activity, as well as the attached prison certificate verifying his available balances. (*See* ECF No. 4, at 1-3.) These documents show that Plaintiff had an available balance of $0.00 at the time of filing. (*See id.*)

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2) and declines to impose a partial filing fee pursuant to 28 U.S.C. Section 1915(b)(1) because his prison certificate indicates he may currently have "no means to pay it." *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). Instead, the Court directs the Secretary of the CDCR, or her designee, to collect the entire $350 balance of the filing fees required by 28 U.S.C. Section 1914 and to forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. Section1915(b)(1).

**II.   Sua Sponte Screening pursuant to 28 U.S.C. Section 1915(e)(2) and Section 1915A(b)**

A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-

answer screening pursuant to 28 U.S.C. Section 1915(e)(2) and Section 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. Section 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. Section 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under Section 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to Section 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

/ / /

/ / /

B. <u>Plaintiff's Factual Allegations</u>

Plaintiff has been an inmate housed in CDCR facilities since November of 2000. *See* Compl., ECF No. 1-2 at 4. Plaintiff first "informed the administration" in 2006 that due to his height, six feet and nine inches, he "couldn't fit on the prison bunk bed." *Id.* Plaintiff's claims the Warden for Pelican Bay State Prison responded to his request by stating that it is "unreasonable to expect modification to any one cell or the structure of that cell to accommodate your stature." *Id.* Plaintiff alleges that he has "incurred many chronic pain ailments" for decades and as a result, he has been "given appliances to help Plaintiff ambulate" including a "cane, knee braces, back brace, walker, mobility vest," and chronos "restricting Plaintiff from top bunk bed access and top tier access." *Id.* at 4-5.

Plaintiff was "transferred from California Men's Colony to California Health Care Facility" (CHCF") but was later informed by a Lieutenant Valasquez[2] that he was "not to be housed at CHCF because of Plaintiff's maximum security level of care." *Id.* at 5. "Weeks after arriving at CHCF," Plaintiff was transferred to California State Prison – Los Angeles County ("CSP-LAC")." *Id.* Plaintiff "experienced extreme depression and was sent to CHCF" in November of 2019 to be housed in the "mental health section of the facility." *Id.* at 5-6.

Plaintiff informed his Primary Care Provider ("PCP") at CHCF, Dr. Yusufzie, that he "has been in prison for 23 years and the first ten years of that prison sentence [Plaintiff] had to sleep in the fetal position on the bed to be able to fit on the bed" and informed Dr. Yusufzie that he had "hit his head many times on the prison cell door ceiling." *Id.* at 6. Dr. Yusufzie "wrote a doctor's order [on] May 28, 2020 stated 'Patient Williams needs a bed adequate for his body length.'" *Id.* However, in June of 2020, Dr. Yusufzie informed Plaintiff that his supervisor had "denied his order[]." *Id.* at 7.

---

[2] Lieutenant Valasquez is not a named Defendant.

On October 15, 2020, "Plaintiff left CHCF and was transferred to [RJD]." *Id.* Upon arrival "Plaintiff immediately informed the intake Receiving & Release Lieutenant" that he should not be housed at RJD due to his "chronic care ailments in conjunction with Plaintiff's inability to fit within the cell." *Id.* The "intake officer informed Plaintiff to submit a grievance" which Plaintiff did on October 17, 2020 and remains "pending." *Id.*

On November 5, 2020, Plaintiff was seen by his new PCP, Dr. Blasdells. *See id.* Plaintiff "explained his many medical ailments" and "included the fact that Plaintiff couldn't live in the standard prison cell due to his height in conjunction with his painful medical ailments." *Id.* at 8. Plaintiff requested Outpatient Housing Unit ("OHU") status which would "allow for Plaintiff to be housed at the prison hospital which is equipped with the amenities for Plaintiff's height and medical needs." *Id.* at 8.

On November 9, 2020, Plaintiff was "summon[ed] to the medical department" and on arrival he was "instructed to relinquish all his DME[3]." *Id.* "Nursing staff informed Plaintiff [that] Dr. Blasdells ordered all [of] Plaintiff's medical appliances confiscated." *Id.* Plaintiff "refused" and he was told by custody staff that "their job was to take away all [of] Plaintiff's medical mobility appliances." *Id.* Plaintiff "informed custody staff" that he "would not be able to ambulate without the DME appliances." *Id.* Plaintiff was later informed by Dr. Blasdells that he was "instructed by [his] supervisor to discontinue all of Plaintiff's DME, any mobility appliances, and tier regulations." *Id.*

On November 8, 2020, Plaintiff was informed that he "would be receiving a cellmate" and he informed "custody and new cellmate" that he "sleeps on the floor due to his body size" and "many chronic pain ailments." *Id.* One day Plaintiff's cellmate "had to use the restroom and forgot Plaintiff was sleeping on the ground." *Id.* at 9. Plaintiff's cellmate "jumped off the top bunk" and "landed on Plaintiff's back." *Id.* Plaintiff was "transferred to the hospital" where he "received treatment." *Id.* Plaintiff "pleaded with the

---

[3] DME is an acronym for "durable medical equipment."

doctor on call" to not send Plaintiff back to his cell but he was later sent back and he still "sleeps on the ground yet now Plaintiff is somewhat under the bed." *Id.*

Plaintiff seeks $350,000 in compensatory damages, $350,000 in punitive damages, and injunctive relief. *See id.* at 15.

## C. Analysis

### 1. Supervisory Liability

Some of Plaintiff's claims against Governor Newsom, Kathleen Allison, and Marcus Pollard are based on their supervisory roles. (*See* Compl., ECF No. 1-2 at 2, 10.) However, Plaintiff fails to make any factual allegations that Newsom, Allison, or Pollard had any personal involvement or knowledge of the alleged constitutional violations. Without "further factual enhancement" to show how, or to what extent, Defendants Newsom, Allison, and Pollard may be held personally liable for any constitutional injury, the Court finds Plaintiff's claims against them must necessarily rest on a theory of vicarious liability. *See Iqbal,* 556 U.S. at 676–77. But "[v]icarious liability is inapplicable to . . . § 1983 suits, [and] a plaintiff must plead that each Government-official defendant, through [his] own individual actions, has violated the Constitution," in order to plead a plausible claim for relief. *Id.* at 676; *see also Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (supervisor may be held liable under Section 1983 only if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation") (citations and internal quotation marks omitted); *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979) (when a named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged); *Victoria v. City of San Diego*, 326 F. Supp. 3d 1003, 1013 (S.D. Cal. 2018) ("Liability under § 1983 arises only upon a showing of personal participation by the defendant."); *Jones v. Comm'ty Redev. Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim).

/ / /

Here, Plaintiff alleges no link between the alleged constitutional violations and any action purportedly taken by any of these Defendants. Accordingly, the Eighth Amendment claims against Defendants Newsom, Allison, and Pollard are DISMISSED for failing to state a claim upon which relief may be granted.

### 2. ADA claims

However, some of Plaintiff's claims against Newsom, Allison, and Pollard arise in their official capacity pursuant to the American with Disabilities Act ("ADA"). Title II of the ADA provides that: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also McGary v. Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004). "The ADA thus not only prohibits public entities from discriminating against the disabled, it also prohibits public entities from *excluding* the disabled from participating in *or* benefiting from a public program, activity, or service 'solely by reason of disability.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 690-91 (9th Cir. 2001) (emphasis in original).

The ADA applies to state prisons. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998). Nevertheless, ADA claims in the prison context "must be analyzed 'in light of effective prison administration.'" *See Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1216 (9th Cir. 2008) (quoting *Gates v. Rowland*, 39 F.3d 1439, 1446 (9th Cir. 1994)). Accordingly, to prevail on an ADA claim in the prison context, "inmates must show that the challenged prison policy or regulation is unreasonable." *See id.* at 1216-17 (citing *Gates*, 39 F.3d at 1447).

As an initial matter, the Ninth Circuit has held that Title II of the ADA allows prisoners to bring suit against state officials in their official, not individual, capacities. *See Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187-88 (9th Cir. 2003). As a result, Plaintiff's ADA claims against these Defendants in their individual capacity must be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b).

///

In addition, Plaintiff must allege that he "was either excluded from participation in or denied the benefits of the [prison's] services, programs, or activities, or was otherwise discriminated against by the [prison]," *see McGary*, 386 F.3d at 1265, "*by reason of [his] disability.*" *See* 42 U.S.C. § 12132 (emphasis added).

Based on the factual allegations set forth above, the Court finds that Plaintiff has alleged facts sufficient to state a claim under the ADA against CDCR officials in their official capacity.

### 3. Eighth Amendment claims

#### a. Defendant Blasdells

The Eighth Amendment requires that inmates have "ready access to adequate medical care," *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), and "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Based on the allegations set forth above regarding Defendant Blasdells, the Court finds that Plaintiff's Eighth Amendment allegations against this Defendant are sufficient to survive the "low threshold" set for sua sponte screening pursuant to 28 U.S.C. Sections 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123.

#### b. Defendants Godinez and Aukerman

However, Plaintiff's Complaint fails to contain any specific factual allegations against Defendants Godinez and Aukerman and contains no "further factual enhancement" which describes how, or to what extent, these individuals became aware of, or were actually aware of, any alleged Eighth Amendment violations. "Because vicarious liability is inapplicable to . . . §1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Jones*, 733 F.2d at 649 (even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim).

"Causation is, of course, a required element of a § 1983 claim." *Estate of Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999). "The inquiry into causation must be

individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988), citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976). There are no factual allegations linking Defendants Godinez or Aukerman as to any of his claims regarding alleged Eighth Amendment violations.

Thus, for these reasons, the Court finds that Plaintiff's claims against Godinez and Aukerman must be dismissed for failing to state a claim upon which relief may be granted.

### 4. California Correctional Health Care Services

Plaintiff's claims against the California Correctional Health Care Services ("CCHCS") must also be dismissed. The CCHCS is not a "person" subject to suit under Section 1983 and is entitled to immunity from suit for monetary damages under the Eleventh Amendment. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 53-54 (1996); *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) (citing *Hale v. Arizona*, 993 F.2d 1387, 1398-99 (9th Cir. 1993)); *see also Dragasits v. California*, No. 3:16-cv-01998-BEN-JLB, 2016 WL 680947, at *3 (S.D. Cal. Nov. 15, 2016) ("The State of California's Department of Corrections and Rehabilitation and any state prison, correctional agency, sub-division, or department under its jurisdiction, are not 'persons' subject to suit under § 1983." (citing *Groten*, 251 F.3d at 851)). Accordingly, Plaintiff's claims against CCHCS are dismissed sua sponte for failure to state a plausible claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1).

### 5. Misjoinder

Plaintiff's claims against Defendants Yusufzie and CME Adams arose when he was previously housed at CHCF and before his arrival at RJD. (*See* Compl. at 6-7.) Federal Rule of Civil Procedure 20 provides that a plaintiff may bring claims against several defendants in the same action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." *See* Fed. R. Civ. P. 20(a)(2)(A)-(B).

Plaintiff's Complaint does not plausibly allege that his claims against Defendants Yusufzie and CME Adams arose out of the "same transaction, occurrence, or series of transactions or occurrences" that occurred later at RJD. *See id.* Accordingly, the Court finds that these claims are misjoined and therefore applies Rule 21. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Under Rule 21, when the Court finds misjoinder, "on its own," the Court may "drop a party" or "sever any claim against a party." *See* Fed. R. Civ. P. 21. The Court therefore severs Plaintiff's claims against Defendants Yusufzie and CME Adams from this action and directs the Clerk of the Court to terminate Defendants Yusufzie and CME Adams as parties. Plaintiff may, if he chooses, pursue these claims by filing a separate action against Defendant Yusufzie and CME Adams in the proper venue.

### III.  Conclusion and Orders

Good cause appearing, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. Section 1915(a) (ECF No. 2).

2. **DIRECTS** the Secretary of the CDCR, or her designee, to collect from the full $350 filing fee owed by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. Section 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California 94283-0001.

4. **DISMISSES** Defendants Yusufzie and CME Adams pursuant to Federal Rule of Civil Procedure 21 and without prejudice to re-filing in a separate action. The Court further **DIRECTS** the Clerk of the Court to terminate Defendants Yusufzie and CME Adams as parties to this action.

5. **DISMISSES** Defendants Godinez and Aukerman for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. Section 1915(e)(2)(B)(ii) and Section 1915A(b)(1).

6. **DISMISSES** Defendant California Correctional Healthcare Services for seeking monetary relief against immune defendants pursuant to 28 U.S.C. Section 1915(e)(2)(B) and Section 1915A(b).

7. **DISMISSES** Plaintiff's claims against Defendants Newsom, Allison, and Pollard in their individual capacity sua sponte for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. Sections 1915(e)(2) and 1915A(b);

8. **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (ECF No. 1) upon Defendants Newsom, Allison, Pollard, and Blasdells and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each of these Defendants. In addition, the Clerk will provide Plaintiff with a certified copy of this Order, a certified copy of his Complaint, and the summons so that he may serve the Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the Form 285 as completely and accurately as possible, *include an address where these Defendants may be served*, *see* S.D. Cal. Civ. L.R. 4.1.c, and return it to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package;

9. **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon Defendants Newsom, Allison, Pollard, and Blasdells as directed by Plaintiff on the USM Form 285 provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3);

10. **ORDERS** the Defendants Newsom, Allison, Pollard, and Blasdells, once served, to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. Sections

1915(e)(2) and 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond); and

11.  **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon the Defendants, or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b).  Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on the Defendants or their counsel, and the date of that service.  *See* S.D. Cal. Civ. L.R. 5.2.  Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon the Defendants, may be disregarded.

**IT IS SO ORDERED.**

Dated:  February 11, 2021

Hon. Gonzalo P. Curiel
United States District Judge