UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY WILLIAMS<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>GAVIN NEWSOM; KATHLEEN ALLISON; MARCUS POLLARD; DR. BLASDELLS,<br><br>　　　　　　　　　Defendants. | Case No.: 20-CV-2398-GPC-AHG<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**[ECF No. 12]** |

　　　Before the Court is Defendants' motion to dismiss Plaintiff's complaint on the grounds that Plaintiff failed to state a claim against Defendants because Plaintiff failed to exhaust administrative remedies. ECF No. 12. On May 12, 2021, the Court granted Plaintiff's request for extension of time to file an opposition no later than July 12, 2021. ECF No. 15. To date, Plaintiff has not filed an opposition. The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1). Based on the reasoning below, the Court GRANTS Defendants' motion to dismiss.

## Procedural Background

On December 8, 2020, Plaintiff, proceeding *pro se* and *in forma pauperis*, filed a complaint seeking damages and injunctive relief against California Department of Corrections and Rehabilitation officials for violations of the Americans with Disabilities Act ("ADA") and the Eighth Amendment under 42 U.S.C. § 1983.  ECF Nos. 1, 1-2[1].  Pursuant to sua sponte screening under 28 U.S.C. §§ 1915 (e)(2), and 1915A(b), the Court dismissed a number of Plaintiff's claims due to legal deficiencies.  ECF No. 6.  Defendants now move to dismiss Plaintiff's remaining claims, which include:  (1) Plaintiff's claims against Defendants Gavin Newsom, Governor of California; Kathleen Allison, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"); and Marcus Pollard, Warden of Richard J. Donovan Correctional Facility ("RJD") for violations of the ADA, 42 U.S.C. § 12101, et. seq., and (2) Plaintiff's claim against Dr. Blasdells, a doctor at Richard J. Donovan Correctional Facility, for violations of the Eighth Amendment under 42 U.S.C. § 1983.  ECF Nos. 1-2, 6.

## Factual Background

Plaintiff is six feet, eight inches tall.[2]  ECF No. 1-2, Compl. ¶ 44.  He has been housed in CDCR facilities since November 2000.  *Id.* ¶ 17.  Plaintiff claims that because of his height, the cells and beds in CDCR facilities do not adequately accommodate his body, and he has developed physical ailments and suffered from chronic pain in his back and knees as a result.  *Id.* ¶¶ 19-23; ECF No. 1, Exs. B, C, and D.

---

[1] The Court refers to Plaintiff's complaint according to the document number assigned by ECF.  The complaint is ECF No. 1-2.

[2] As Defendants note, Plaintiff lists his height as six feet, eight inches tall at times, and six feet, nine inches tall at other times.  ECF No. 12, Mot. at 7, n. 1.  We refer to his height as six feet, eight inches, because that is the height listed in those medical records attached to Plaintiff's complaint.  *See, e.g.*, ECF No. 1, Ex. E at 30.

In the intervening two decades, Plaintiff has filed numerous grievances and appeals relating to his medical conditions and accommodations, and he has been unsuccessful in securing redress. *See* ECF No. 1; ECF No. 1-2, at 4-5.  Plaintiff lodged his first grievance in 2006, in which he explained that because of his height, "the bed . . . doesn't have enough length to fit the length of [his] body," and requested the use of an egg-crate mattress pad.  ECF No. 1, Ex. A at 12.   Denying Plaintiff's request, the Warden for Pelican Bay stated it was "unreasonable to expect modification to any one cell or the structure of that cell to accommodate [Plaintiff's] stature." *Id.* at 10.  Plaintiff's subsequent requests for accommodations in his sleeping arrangements—namely, a larger bed so Plaintiff would not need to sleep in the fetal position or on the floor—were repeatedly denied.  ECF No. 1, Ex. I at 53; ECF No. 1, Ex. J at 57. Specifically, Plaintiff claims he has developed a back injury due to the size of the beds in CDCR facilities. ECF No. 1-2 ¶ 20.  Plaintiff also has chronic pain relating to a knee injury from 2010, which exacerbated a pre-existing issue.  ECF No. 1-2 ¶¶ 19, 21-22; ECF No. 1, Ex. B. at 17-18; ECF No. 1, Ex. D at 25.

Plaintiff was temporarily "transferred from California Men's Colony to California Health Care Facility" ("CHCF") for mental health treatment, but was subsequently transferred to California State Prison – Los Angeles County.  ECF No. 1-2 ¶¶ 26-27.   At CHCF, Plaintiff informed his Primary Care Provider ("PCP") that he "has been in prison for 23 years and the first ten years of that prison sentence, [Plaintiff] had to sleep in the fetal position on the bed to be able to fit on the bed." ECF No. 1-2 ¶ 34.  Plaintiff's PCP "wrote a doctor's order [on] May 28, 2020 stated 'Patient Williams needs a bed adequate for his body length.'"  *Id.* ¶ 35.  Plaintiff was later informed that his PCP's supervisor "denied his order[]."  *Id.* ¶ 38.

On October 15, 2020, Plaintiff was transferred from CHCF to RJD.  *Id.* ¶ 41. Upon his arrival, the intake officer instructed Plaintiff to submit a grievance about his

3

20-CV-2398-GPC-AHG

In the intervening two decades, Plaintiff has filed numerous grievances and appeals relating to his medical conditions and accommodations, and he has been unsuccessful in securing redress. *See* ECF No. 1; ECF No. 1-2, at 4-5.  Plaintiff lodged his first grievance in 2006, in which he explained that because of his height, "the bed . . . doesn't have enough length to fit the length of [his] body," and requested the use of an egg-crate mattress pad.  ECF No. 1, Ex. A at 12.   Denying Plaintiff's request, the Warden for Pelican Bay stated it was "unreasonable to expect modification to any one cell or the structure of that cell to accommodate [Plaintiff's] stature." *Id.* at 10.  Plaintiff's subsequent requests for accommodations in his sleeping arrangements—namely, a larger bed so Plaintiff would not need to sleep in the fetal position or on the floor—were repeatedly denied.  ECF No. 1, Ex. I at 53; ECF No. 1, Ex. J at 57. Specifically, Plaintiff claims he has developed a back injury due to the size of the beds in CDCR facilities. ECF No. 1-2 ¶ 20.  Plaintiff also has chronic pain relating to a knee injury from 2010, which exacerbated a pre-existing issue.  ECF No. 1-2 ¶¶ 19, 21-22; ECF No. 1, Ex. B. at 17-18; ECF No. 1, Ex. D at 25.

Plaintiff was temporarily "transferred from California Men's Colony to California Health Care Facility" ("CHCF") for mental health treatment, but was subsequently transferred to California State Prison – Los Angeles County.  ECF No. 1-2 ¶¶ 26-27.   At CHCF, Plaintiff informed his Primary Care Provider ("PCP") that he "has been in prison for 23 years and the first ten years of that prison sentence, [Plaintiff] had to sleep in the fetal position on the bed to be able to fit on the bed." ECF No. 1-2 ¶ 34.  Plaintiff's PCP "wrote a doctor's order [on] May 28, 2020 stated 'Patient Williams needs a bed adequate for his body length.'"  *Id.* ¶ 35.  Plaintiff was later informed that his PCP's supervisor "denied his order[]."  *Id.* ¶ 38.

On October 15, 2020, Plaintiff was transferred from CHCF to RJD.  *Id.* ¶ 41. Upon his arrival, the intake officer instructed Plaintiff to submit a grievance about his

housing accommodations. *Id.* ¶ 43. Plaintiff submitted a grievance on October 17, 2020. *Id.* ¶ 44. Plaintiff also claims that despite "explain[ing] his many medical ailments" to his PCP at RJD, Dr. Blasdells, in November 2020, he was "summon[ed] to the medical department" where he was "instructed to relinquish" all of his medical equipment including his cane, knee braces, walker and mobility vest. *Id.* ¶ 45-46. Dr. Blasdells later informed Plaintiff that he was "instructed by [his] supervisors to discontinue all of Plaintiff's DME[3], any mobility appliances, and tier regulations." *Id.* ¶ 47.

Plaintiff claims Defendants Newsom, Allison and Pollard violated the Americans with Disabilities Act ("ADA") and Defendant Dr. Blasdells violated Plaintiff's Eighth Amendment rights for failing to provide adequate medical care and deliberate indifference.

## Discussion

Defendants move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), on the grounds that Plaintiff failed to state a claim against Defendants because Plaintiff failed to exhaust administrative remedies. ECF. No. 12, Mot. at 1.

**A.   Legal Standard for Failure to Exhaust Administrative Remedies Under the Prison Litigation Reform Act**

The Ninth Circuit clarified in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014), that the "appropriate device" for a pretrial determination of whether administrative remedies have been exhausted under the Prison Litigation Reform Act is ordinarily a motion for summary judgment under Rule 56. *Id.* at 1168. Motions to dismiss grounded in exhaustion are almost always disfavored in the prisoner litigation context because "failure to exhaust is an affirmative defense under the PLRA" and inmate-plaintiffs need

---

[3] DME is an acronym for "durable medical equipment."

not "specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Rather, "exhaustion under § 1997e(a) is an affirmative defense that must be pled and proved by a *defendant*." *Albino*, 747 F.3d at 1168 (emphasis added). However, "in those rare cases where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim. *Id.* at 1169. Whenever "feasible," exhaustion should be "decided at the very beginning of the litigation." *Id.* at 1171.

**B.   Legal Standard for a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for Failure to State a Claim**

In considering a defendant's motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court accepts plaintiff's allegations as true and construes facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). At this early stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Claims are facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

To state a claim under 42 U.S.C. § 1983, and defeat a motion to dismiss, a plaintiff must plead sufficient facts to show: (1) that a person acting under state law engaged in the conduct at issue; and (2) that the conduct at issue deprived the plaintiff of some right, privilege or immunity protected by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc).

### C. Administrative Exhaustion

The PLRA states "[n]o action shall be brought with respect to conditions under 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Exhaustion in cases covered by § 1997e(a) is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). By its terms, the PLRA and its exhaustion requirement apply to lawsuits brought by inmates under *any* federal laws, not just § 1983 actions for constitutional violations. Plaintiffs in state custody must exhaust administrative remedies prior to filing their suit, and may not cure an exhaustion defect during the pendency of the suit. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam) (requiring dismissal without prejudice where a prisoner "d[oes] not exhaust his administrative remedies prior to filing suit but is in the process of doing so when a motion to dismiss is filed").

An inmate is required only to exhaust *available* remedies. *Booth v. Churner*, 532 U.S. 731, 736 (2001); *Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005). To be considered "available," the remedy must be available to the plaintiff "as a practical matter," meaning it is "capable of use; at hand." *Albino*, 747 F.3d at 1171 (quoting *Booth*, 532 U.S. at 937). "The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance" before filing suit. *Brown*, 422 F.3d at 935. Supreme Court authority requires a plaintiff to adhere to the correctional facility's proscribed processes: "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218 (recognizing that each prison system's procedures for lodging and appealing grievances may differ, but plaintiffs must comply with the proscribed system to satisfy exhaustion).

The question of whether Plaintiff has satisfied exhaustion in this case is governed by CDCR policy at the time he filed the complaint in December 2020. *See id.* The CDCR's grievance system required an inmate to submit grievances within thirty calendar days of the event or decision being grieved. Cal. Code Regs. tit. 15, § 3084.8(b)(1) (2020). Upon receiving a response, the inmate has the right to appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code *Id.* at § 3084.1(a). Upon receiving a response, the inmate then has thirty days to escalate the grievance to the next level for further review. *Id.* § 3084.8(b)(3). To exhaust available administrative remedies, a "prisoner must submit his complaint on CDCR Form 602 and proceed through several levels of appeal: (1) first formal-level appeal filed with one of the institution's appeals coordinators, (2) second formal-level appeal filed with the institution head or designee, and (3) third formal-level appeal filed with the CDCR director or designee." *Henderson v. Muniz*, 196 F. Supp. 3d 1092, 1101 (N.D. Cal. 2016) (citing Cal. Code Regs. tit. 15, § 3084.7). Therefore, *only* when an inmate has appealed a decision on his grievance the third-level of review, *and* received a decision on that appeal denying the request, has he exhausted administrative remedies. Cal. Code Regs. tit. 15, § 3083.

Plaintiff is six feet, eight inches tall, and by all accounts by both him and CDCR officials, the beds, cells, and other facilities in California state prisons cannot adequately accommodate his body. Accepting as true Plaintiff's factual claims about the medical conditions and ailments he has suffered during his time in California state custody, the Court must nevertheless grant Defendants' motion to dismiss Plaintiff's complaint because Plaintiff failed to exhaust all available administrative remedies *before* he filed this complaint in December 2020. By his own admission on the face of Plaintiff's complaint, ECF No. 1-2 ¶ 44, as of the filing date, Plaintiff's grievance was still pending,

and Plaintiff had not yet pursued and failed at each stage of the review and appeals process, *id.* The PLRA unequivocally mandates exhaustion. 42 U.S.C. § 1997e(a); *Porter*, 534 U.S. at 524.  The Court acknowledges that Plaintiff has, since 2016, repeatedly sought help from CDCR officials in obtaining satisfactory sleeping accommodations for himself. *See* ECF No. 1, Ex. A at 9.  That Plaintiff has diligently "filed numerous grievances over a 15 year period which all were returned to no avail providing no remedies and providing no resolution to the Plaintiff's complaints," ECF No. 1-2 ¶ 14, does not itself satisfy exhaustion of administrative remedies for the purposes of the PLRA.  Rather, here, it is "clear on the face of the complaint," *Albino*, 747 F.3d at 1166, that Plaintiff's October 2020 grievance was still pending when he filed this complaint. ECF No. 1-2 ¶ 44.  Defendants therefore properly moved to dismiss Plaintiff's complaint under Rule 12(b)(6).  Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim, without prejudice.  To the extent that Plaintiff wishes to raise claims similar to those alleged in the complaint, he must pursue the grievance and appeal process through the highest level of appeals as outlined by CDCR policy, *prior to* refiling a new and separate complaint, in order to avoid exhaustion pitfalls.

## Conclusion

Based on the reasoning above, the Court GRANTS Defendants' motion to dismiss the complaint on the grounds that Plaintiff failed to state a claim under Federal Rule of Civil Procedure 12(b)(6), without prejudice.  The hearing set on September 10, 2021 shall be vacated.

**IT IS SO ORDERED.**

Dated:  September 9, 2021

Hon. Gonzalo P. Curiel
United States District Judge